[No. 1778.]

THE CITY OF DENVER v. DOMEDIAN.

INTOXICATING LIQUORS—WINE ROOMS—SALE TO FEMALES—CITY OR-
DINANCE.

Section 11 of an ordinance of the city of Denver regulating dram shops and tippling houses prohibits the keeping in connection with, or as a part of any dram shop or tippling house any wine room or other place into which any female person shall be permitted to enter and there be supplied with any kind of liquor, and section 12 prohibits the person having charge or control from permitting any female person to be or remain in such dram shop, tippling house or other place where intoxicating or malt liquors are sold or given away, for the purpose of there being supplied with any kind of liquor. *Held* that the ordinance applies only to dram shops or saloons and to rooms commonly known as wine rooms kept and used for the purpose of serving liquors and operated in connection with and as a part of the dram shop, and does not apply to a restaurant adjacent to a saloon and owned and run by the proprietor thereof, the business of which restaurant is to prepare and serve meals. It is not a violation of the ordinance to permit females to be in such restaurant or to sell to them liquors therein, to be served with their meals.

*Appeal from the County Court of Arapahoe County.*

Mr. GEORGE C. NORRIS and Mr. N. B. BACHTELL, for appellant.

Messrs. FELKER & DAYTON, for appellee.

WILSON, J.

This was an action commenced by the plaintiff city to recover from the defendant Domedian the penalty for an alleged violation of the city ordinance. The title of the ordinance, as given in the abstract, is: " A bill for an ordinance concerning the licensing and regulating of dram shops and tippling houses in the city of Denver." Only two sections of the ordinance have any bearing upon the case, and are necessary to be considered. They are:

" Sec. 11. Each and every dram shop or tippling house keeper licensed under the provisions of this ordinance, who shall, by himself or his agent, clerk or servant, permit any gambling or riotous or disorderly, indecent or offensive conduct, in or about his place of business or premises, or who shall have or keep in connection with, or as a part of such dram shop or tippling house, any wine room or other place, either with or without door or doors, curtain or curtains, or screen of any kind, into which any female person shall be permitted to enter from the outside, or from such dram shop or tippling house, and there be supplied with any kind of liquor whatsoever, shall, upon conviction, be fined as hereinafter provided.

" Sec. 12. No person, whether as principal, clerk, agent or servant, having charge or control of any dram shop or tippling house, liquor saloon or place where intoxicating or malt liquors are sold or given away, or any place adjacent thereto, or connected therewith in any manner whatsoever, either by doors or otherwise, shall suffer or permit any female person to be or remain in such dram shop, tippling house, liquor saloon or other place where intoxicating or malt liquors are sold or given away, for the purpose of there being supplied with any kind of liquor whatsoever. No person owning or having charge or control of any dram shop, tippling house or liquor saloon shall employ or procure, or cause to be employed or procured, any female person to wait or in any manner attend on any person in any dram shop, tippling house or liquor saloon or in any place adjacent thereto or connected therewith, where intoxicating or malt liquors are sold

or given away, nor shall any female person be or remain in any dram shop, tippling house, liquor saloon or place adjacent thereto or connected therewith, and wait or attend on any person, or solicit drinks in any such place."

The cause was tried and submitted upon an agreed statement of facts, which is as follows:

"That defendant was the keeper of a saloon situated in the basement of No. 805 Sixteenth street, being on the corner of Stout and Sixteenth streets, in the city of Denver; that he also had a restaurant in the same building, Nos. 1611 and 1613 Stout street; that defendant had two dining rooms in his restaurant, one in the basement and one on the ground floor, the entrance to both of which was from Stout street; that on the day charged in the complaint six persons entered the dining room upon the ground floor and ordered meals, two or three of the party being women; that in connection with their meals they ordered wines or other liquors, which were served to the parties, including the women, and were drank by them in connection with their meals, which is the same and identical offense charged in the complaint in this action; that the dining room in which these parties were at the time of ordering their meals and partaking of the same and of the liquors in connection therewith, is between fifty and sixty feet in size; that in it were situated between twelve and fifteen tables, and it was used solely as a restaurant; that this restaurant had a full equipment and complement of cooking utensils and ranges, both coal and gas, such as are used in a restaurant of the size of the one herein described, and that between thirteen and sixteen people are employed in the restaurant to cook and serve meals to the customers of defendant in such restaurant; that the only entrance from the saloon proper into the ground floor dining room was through an open hallway which was used in common by the tenants of said building; that in serving liquors with meals in the restaurant the liquors were taken from the bar in the saloon and carried by waiters into the restaurant; that this was not a " cracker " meal, but was a full meal of victuals

that was ordered and partaken of in the restaurant; and that the defendant was duly licensed to sell liquors at his said saloon, under the provisions of the ordinance hereinafter set forth."

Judgment in the police magistrate's court was in favor of the plaintiff, but, upon appeal to the county court, judgment was in favor of the defendant. From this, the plaintiff city prosecutes an appeal to this court.

The ordinances in question are penal statutes, and hence must be strictly construed. Sutherland on Stat. Cons. § 208; Bishop, Stat. Crimes, §§ 68, 193.

A proper regard for the liberty of the citizen requires, before he can be convicted and punished for an alleged offense, which is not such *per se*, but made so only by statute, that the offense be described with such particularity and certainty that it may be understood by one of reasonable intelligence to be prohibited, without a resort to extreme technical legal rules of construction. With these rules, the great mass of the people, for whose guidance the statute is enacted, are unacquainted. It would be, therefore, manifestly an injustice and outrage to punish one for the commission of an act which he did not know, and could not have known, was a violation of law.

*Ignorantia legis non excusat* is a maxim founded upon sound principles of public policy, being necessary for the protection of life and property, the preservation of order and the due administration of justice. Every citizen is presumed to know the law, but in case of offenses which become such solely by the provisions of a statute, the obligation is upon the law-making power to describe the acts which shall constitute the offense with sufficient clearness and definiteness to be understood by the citizen who is required to obey it. The rule has been thus forcibly expressed by Chief Justice Marshall:

" The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals and on the plain principle that the power of punish-

ment is vested in the legislature, not in the judicial department; it is the legislature, not the court, which is to define the crime and ordain its punishment. * * * The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a very strong one indeed which would justify a court in departing from the plain meaning of the words, especially in a penal act in search of an intention which the words themselves did not suggest." *U. S. v. Wiltberger*, 5 Wheaton, 76.

In reference to this, Judge Dillon has also aptly said:

" Criminal statutes are, to adopt a word very happily used by Mr. Bishop, inelastic, and cannot by construction be made to embrace cases plainly without the letter, though within the reason and policy of the law." *State v. Lovell*, 23 Ia. 305.

The primary object of all rules for the interpretation of statutes is to ascertain the meaning of the legislature which enacted them; but, with reference to a penal statute, this is qualified by the further rule that the meaning or intent of the legislature cannot be used to extend the statute beyond the limits of its express provisions, and that the meaning which is to control is the one which the subjects of the government are authorized to understand the legislature intended.

In the case at bar, so far as the present prosecution is concerned, the object of the municipality in enacting the sections under consideration is apparent, we think, from a mere reading of them. There was no attempt to prohibit the drinking of intoxicating liquor by females, nor its sale or service to them, except in a certain locality. It was the prohibited locality which constituted the offense. The chief and sole object of the ordinance was, and it is so conceded by counsel upon oral argument, to prevent the frequenting of dram shops or liquor saloons by females, and further to prevent an evasion of this regulation by the maintenance of some adjacent or convenient room, separate and distinct from

the dram shop proper, but really, so far as its use was concerned, maintained and operated as a part of the dram shop, and commonly known and designated as a "wine room," which females would be permitted to visit, and be served with intoxicating liquors from the dram shop.

If the proprietor of a drinking saloon could keep for the use of female patrons an adjacent or convenient room, although separate and distinct from the saloon proper, but used primarily for the purposes of the saloon, viz, the sale and service of intoxicating drinks, then the law referred to would be a nullity; the immoral and vicious tendencies sought to be guarded against would still exist, and possibly with intensified force. It was the use, however, to which the adjacent room or place was put by which the ordinance is to designate its character. The language of section 11 is: "Who shall have or keep, in connection with, or as a part of such dram shop or tippling house, any wine room or other place into which any female person shall be permitted to enter * * * and there be supplied with any kind of liquor," etc.

The only sensible construction of the language is that it applies to, and prohibits, the keeping of a room for the convenience of females desiring to be served with liquor, and used for the purposes of the main saloon, thereby becoming in practical effect a part of it. By no rule of interpretation can we see how this can be extended, so as to embrace another room or rooms belonging to the same proprietor, but in which a separate, distinct and legitimate business may be carried on. In this case, the room in question, where the offense is said to have been committed, was used as a restaurant, and according to the agreed statement of facts, solely for that purpose, it being provided with a full complement of cooking utensils, cooks and waiters to prepare and serve meals.

If the construction contended for by appellant be correct, then the dining rooms of hotels would be subject to suppression, as "wine rooms." We cannot concur in such a conclusion until the language of a statute or ordinance unmistakably requires it, and such is not the case here.

Under the facts stated, the only question involved in this case has already been passed upon by this court. *Walker v. The People*, 5 Colo. App. 38. There Judge Thomson, speaking for the court, said:

" The room described by the witness was not a wine room within the meaning of the law. To make it a wine room it must have been kept in connection with, or as a part of, the saloon. The legislature evidently intended to designate a place which patrons of a saloon might use for private tippling purposes, instead of drinking at the bar, and in which a portion of the business of the saloon should be carried on."

It is true, this was a prosecution under a state statute, but it had the same purpose in view as the ordinances under consideration, and, if possible, was expressed in even plainer and stronger language.

As to the other questions presented and argued, we express no opinion. What we have said must be taken solely with reference to the question which we have considered, viz, would the facts as stated, support a conviction of the offense defined in the city ordinance? Being convinced that they would not, the judgment of the county court will be affirmed.

*Affirmed.*

### ON PETITION FOR REHEARING.

WILSON, J.

Upon the petition for rehearing counsel for the city insist that whatever may be the construction of section 11, of the city ordinance quoted in the opinion of the court as applicable to the case at bar, the defendant was guilty under the terms of section 12, and to this the court has not given proper consideration. In our opinion, in reason and under all rules of construction, section 11 and the first part of section 12, which is alone applicable to the facts in this case, are supplements of each other. Both are intended to suppress the

same evil, and they should be construed together. Section 11 prohibits the keeping, in connection with or as a part of a dram shop or tippling house, any wine room or other place into which a female shall be permitted to enter and there be supplied with liquor. To constitute an offense under this section, two things must concur. (1) The dram shop keeper must have or keep in connection with or as a part of his dram shop a wine room or other place in which liquors are to be supplied. (2) The supplying a female in such place with liquor. It is not sufficient, alone, that a place shall be kept in connection with or as a part of such dram shop in which liquor may be sold or served, but, to constitute a violation of the section, a female must be supplied with liquor in such place. Nor is there any prohibition to the supplying of liquor to a female from the saloon, if it be not supplied in such a "place" as described in the ordinance. A female, for instance, might enter the saloon proper, and be supplied at the bar with liquor, as any other person, and it would be no violation of this section. This, manifestly, was not sufficient to suppress the evil intended, namely, the frequenting of saloons by females, and the attendant results so offensive to decency and the moral sense of the public ; and, therefore, section 12 was enacted, going still a step further. This prohibits the permitting of any female in the saloon proper *for the purpose of being supplied with liquor ;* and also bearing in mind that this might be evaded by the maintenance of some other place or room adjacent to, or easily accessible therefrom, and maintained for the purpose of furthering the business of the dram shop, it includes in its prohibition " other place," but qualifies it by adding the words " where intoxicating or malt liquors are sold or given away." The section surely does not refer to parties selling or giving away liquors without any saloon license whatever. Offenses of this kind could be readily reached by an arrest of the party for selling liquor without license. It must clearly refer only to rooms or places so adjacent to or accessible from the saloon proper, that they may be termed and are intended to be part of and

adjunct to the dram shop for the sale of liquors for which the owner has a license. The sale to men in such place would be covered by the license, and would not be in violation of the ordinance. Suppose, as in the *Walker* case, the family of the proprietor of the dram shop should reside in the same building, and that in a single instance he should supply liquor to a female visitor of his family in their living rooms, surely it could not be contended that this was a violation of either one of the sections in question. In this case, it could not be said upon this state of facts, alone, the living room was used as an adjunct to or part of the dram shop for use for the sale of liquors. If, of course, this was done to an extent that would justify the reasonable conclusion that this was simply an attempted evasion of the law, and that such room was really being used as an adjunct to or part of the dram shop proper, it would present a different question. Suppose a dram shop keeper was engaged in five or six different occupations under the same roof, but in different rooms, all others being entirely distinct from the dram shop business, could it be reasonably contended that the supplying of liquor to a female in one of the other rooms, where a business entirely different from and disconnected with the dram shop business was carried on, would be a violation of this statute? There might arise a question as to whether there had been a sale of liquor without license, if it was a sale. If section 12 be construed as contended for by the plaintiff, a mere gift of liquor to a female in such "other place," even though it be entirely disconnected with the saloon proper so far as its business was concerned, would be a violation of the ordinance. It will be observed that section 12 is quite far-reaching. It does not require to constitute the offense that there shall be a sale of liquor to the female, but the offense is committed if the female is permitted to be or remain in the prohibited place for the purpose of being supplied with liquor. The evident object of this was to prevent any evasion of the law. Under section 11, before a conviction could be had, it must be shown that a female, although in the prohibited place,

was supplied with liquor. This might be very difficult at times to show. Therefore, section 12 provides, that if a female is permitted in the prohibited place for the purpose of being supplied with liquor, the offense is complete. If such place is kept as an adjunct to and a part of the dram shop proper, for the purpose of facilitating and carrying on its business, the mere presence therein of females, although not caught in the act of being supplied with liquor, or of drinking liquor, would be, nevertheless, very strong evidence that they were there, and permitted there, for the purpose of being so supplied. The circumstances and surroundings might be such as to furnish sufficiently strong evidence to secure a conviction, although, as we have said, the actual supplying of the liquor could not be proved. Sections 11 and 12 are a part of the same ordinance, and refer to the same subject, namely, the frequenting of dram shops by females; and under every rule of statutory construction, in order to arrive at the intent of the legislative power, they must be construed together. We think, therefore, there is no question that the words "other place" where used in either section refer, and refer only, to some place maintained by the dram shop keeper as an adjunct to, and part of his dram shop. The contention that the construction which we have given to these sections would open wide the door for evasion of the ordinance, render the city powerless to suppress the evil sought to be crushed and make possible a carnival of indecency is, we think, wholly unfounded and, in any event, without weight. We are not attempting a general construction of the ordinance. Only one case is before us, and we are construing the ordinance only with reference to its application to the particular facts of this case—the facts stipulated by the city which is now the party complaining. We agree that the ordinance is a good one; that its objects are most praiseworthy, and that its rigid enforcement would meet with the approval of every good citizen. In the case at bar, we simply say that the facts, as set forth in the agreed statement, do not bring the case within the prohibi-

tion of the law.  If the city was misled in the stipulation of facts, this court is not responsible, and, among these facts, it was stipulated by the city that the place where the alleged offense was committed was kept and used solely for the legitimate purposes of a restaurant.  This concession excludes the idea that the room was kept as an adjunct to or part of the dram shop or for the sale of liquors.  The fact that its owner happened also to be the owner of a dram shop under the same roof, but not connected with it in such a sense as intended by the ordinance, cannot constitute the offense. If the opinion of this court shall direct attention to any defects in the ordinance, it will, to this extent at least, despite the direful predictions of counsel, subserve a good purpose. The city council which exercises the legislative power vested in the municipality may readily amend the ordinance in such a manner as to make it more effective, more stringent, and to prevent all possible evasions.

The petition for a rehearing is denied.

*Denied.*